Good morning ladies and gentlemen. Judge Sykes and I are very pleased to have sitting with us the visiting judge, Judge Yankel of the Southern District of Illinois. And our first case for argument is Women's Health Link v. Fort Wayne Public Transportation. Mr. Thuriot. Good morning and may it please the court. This case is striking because CityLink excluded Women's Health Link's ad from its forum about and the ad was about health care because not what it says but the ideology of the speaker. In their brief they say that most recently they say it's the goals of the speaker that was the problem. And in fact they can see that the ad on its face is both innocuous and it's not offensive. The problem is they don't like the organization Women's Health Link and what it stands for. Another organization with different goals would have been able to run the ad and of course this runs directly into the Supreme Court's ruling in Rosenberger's that says that speech can't be excluded even from a non-public forum if the motivating ideology of the speaker is the problem. And of course this court confirmed that in the DeBoer case saying that if you exclude a speaker because of the beliefs or the ideas of the speaker that is viewpoint discriminatory and is violating of the First Amendment in spades. Are there ads in the bus or on the bus that similarly are ads innocuous on their face but maybe they're people who dislike the organization or if they knew about the organization they would find it was offensive to them. I noticed for example one of the ads is for something called the Lutheran Hospital. Right yeah it's for the Lutheran Hospital it's a health care ad and it I think for instance the one that comes immediately to mind is the Crimestoppers ad. If you go to their website there's a little there's a little video about snitching and it says snitching is okay and there are some people who are offended by snitching some people who aren't. By snitching? Oh you mean by reporting. Right by reporting. So there are some and of course United Way Allen County if you go to their website they actually have some ads not some ads excuse me but have some advocacy for adoption of particular statutes regarding early child learning clearly political activity that some people would disagree with but on the face of its ad it's completely innocuous and funny. And of course Narcotics Anonymous is a faith-based treatment program. Certainly it is. They are also permitted to advertise on the city links buses. That's right and there's evidence in the record that non-PSAs have actually included religious information in their ad actually a statement that about religion it was an attorney who was advertising his particular services and he said the Davis Disability Group and he says the true test of Christian character is how we treat people. Now that's not a public service announcement but this court held in in DeBoer I believe it was that when you're comparing the commercial versus PSAs for viewpoint discriminatory purposes it doesn't matter. More importantly that indicates how unreasonable this restriction is. This restriction on political religious and moral advertisements only applies to PSAs and if CityLink is really concerned about offending observers they would make that apply to all ads on the buses and it simply doesn't. What the primary argument that they make is that this case is like Choose Life versus White. Is what? I'm sorry I didn't hear you. The primary argument that CityLink makes at this stage in litigation is that this case is like Choose Life versus White. They've excluded the topic of abortion and that case doesn't apply here for numerous reasons. I think first of all the ad nor the neither the ad nor the website even mentioned abortion or advocate for or against abortion in any way. But secondly the CityLink has said that if you talk about abortion that's okay the topic isn't completely proscribed like it was in White as long as you do it from a viewpoint neutral fashion. And of course that requirement in and of itself is viewpoint discriminatory under this court's holding in DeBoer. And of course the prohibition on abortion that they are now arguing isn't even in the policy. In fact they didn't even begin arguing that that it applied and that abortion was excluded until the summary judgment stage of this case. So it was I think the far for excluding the ad. What remedy are you seeking? We're seeking a declaration that the policy is unconstitutional on its face and as applied. And a preliminary injunction allowing us to run our ad. Well an as applied ruling would do right? Yes. We don't have to necessarily get to the facial challenge if this is an as applied violation. That's correct. What this court should be focusing on is the whether or not the same general subject matter is allowed in the forum. And as this as this court articulated the analysis and airline pilots and clearly it is. Whether you look at the topic of health care, whether you talk about vulnerable members of the community as Judge Sykes pointed out, Narcotics Anonymous was allowed to Yes. Let me ask you, you mentioned that the abortion or abortion services are not even mentioned in the website for the organization. Doesn't the website indicate that the organization promotes life affirming health care services? It does. And what does that mean? Well it certainly means that it is a organization that has a pro-life point of view. There's no question about that. We don't run away from that. However, that's not advocating for or against abortion in any way. And that is only mentioned three times on the website. It's not a prominent part of the policies of CityLink to prohibit material that's political, moral, or religious as long as it is viewpoint neutral. In other words, it would be certainly an issue if CityLink allowed advertising either based on content or by organizations that had a pro-choice viewpoint and not a life affirming viewpoint. But to the extent that they would exclude all advertising on the subject matter or with the viewpoint of the focus of abortion, how is that not permissible? How is that viewpoint discriminatory? Well it's viewpoint discriminatory because just as the Supreme Court held in Rosenberger, excluding all viewpoints on a particular topic or at least two viewpoints on a particular topic. Now Rosenberger applied to public forum. It was a non-public forum, Your Honor. It was a non-public forum. No, was it a designated public forum? It was a fee, access to fees, and it was considered a non-public forum. So it applied the viewpoint discrimination and reasonableness test. And in that particular case, the court determined that, it said that, you know, you can exclude religion and religion as a topic, but religion is also a viewpoint. But if I can, in Rosenberger, the opinion indicates that the guideline in question violated the principles governing speech in a limited public forum. So the forum, you have to start the analysis, don't you, agree with what the forum is, that there is a difference between public, limited public, designated public, and non-public forum in terms of what, in terms of the analysis and what's permissible and when, correct? Well respectfully, Your Honor, there is no difference between the non-public and the limited public forum. The test is the same. Viewpoint discrimination is not allowed and the restriction must be we're saying that even if this is a non-public forum, and we think there's some evidence that it's designated, but even if it's a non-public forum, you cannot discriminate based upon viewpoint and excluding a topic just begins the analysis. As this court said in airline pilots, even if you exclude the topic of politics, that only begins the analysis of whether there was viewpoint discrimination. And here we have viewpoint discrimination because even if they exclude pro-life or pro-choice views or require you to include them, that's viewpoint discriminatory because each topic has multi-levels of views. Views aren't just bilateral as the Supreme Court pointed out in Rosenberger. And what they've said essentially is if you take an agnostic view on abortion, which is a view, then you're permitted to talk about it here. And of course it's important to note that they haven't excluded the topic of abortion completely. And that's what, that's why this case. You said they have not? They have not. You can talk about it as you, as long as you do it in a viewpoint neutral way or include all views, but that in and of itself is viewpoint discriminatory. Have they had ads with that content or ads from advertisers that discuss our address as you put it, abortion in a viewpoint neutral way? They have not. They've, they have not. Of course ours doesn't either, but they have not. So I think finally I'd just like to point out that there, it's not reasonable to include this. It not only fails the viewpoint discrimination part of the test, but also it's not reasonable, not only because we don't mention abortion, but because they allow other organizations to talk about political and religious things. And if those are, if there's a concern about captive audience, they should say that not only PSAs, but any commercial advertiser shouldn't be able to talk about these things. And then finally, the unbridled discretion that is involved here is incredibly wide. They don't define political, religious, or moral, even though those topics are purported to be excluded. And this policy says that they can modify the policy as it deems necessary, as Citilink deems necessary. Don't the policies also provide for an appeal? They do. And in this case, your clients did not seek an appeal. Did not seek an appeal. It's not required. You do, as a matter of fact. It's not required, but wouldn't you agree that an appeal is a check on, is a check on this unbridled discretion that you describe? In other words, there's not It's to a different committee, but in the past, they've came to the same conclusion. For instance, the Adoption Support Center was denied. It appealed, even though it was a commercial speaker. And they said, no, you can't do it because it's controversial. And of course, that's one of the things that they, that they're. But we're talking about the check on the, what you called unbridled discretion. That was a check on discretion. It is, it is a check, but it's not, it's not sufficient because they've been able to, since then, to, for instance, in this case, add, modify the policy to include viewpoint neutral requirement, not in the policy. An abortion prohibition, not in the policy, and a prohibition on controversial. All of these things allow them to adjust the policy as they like to engage in viewpoint discrimination. Subject to the right to appeal. Subject to the right to appeal, but you know, if the right to appeal is futile, as it indicates, as the record indicates that it would be in this case. Well, how would we know it's futile if you didn't try it? Well, we know it's futile because the Adoption Support Center, which didn't mention abortion either, appealed and their appeal was denied in 2012. I'd like to reserve the remainder of my time. Okay, thank you, Mr. Seward. Thank you. Mr. Beverstead? Good morning. May it please the Court. This case boils down to one very simple question. Is it reasonable on the part of CityLink to restrict from ads within its buses any ads on the topic of abortion? No, look, here's what your problem is. Your regulation policy governing all advertising, it talks about the advertisement. The advertisement contains material that demeans or disgraces an individual. And if the advertisement promotes the sale or use of alcohol. The advertisement contains profane language. The advertisement contains an image or description of violence. This advertisement, which shows the girl and women's health, it does not contain any reference, direct or indirect, to abortion. That is correct. But what you are doing, you're going behind the advertisement to what you know about the advertiser. But you don't do it in any other case. There's no evidence that we have not done that in any other case. Well, look at all the advertisements. You look through the books of advertisements. There are obviously questionable ads. Now, what is the Lutheran Hospital have religion? Does their religion affect the medical care they give? Well, Judge. Well, does it or not? No. How do you know? Because I have represented the hospital in the past. It's a privately owned hospital. It's not owned by the Lutheran Church. Why is it called hospital? Because it was at one time part of the Lutheran Church, but it was sold to a private organization. So the mere fact that it has the name Lutheran in it, there's no evidence to suggest that the fact that it has the name Lutheran means that it is promoting or advocating a position on a religious, moral or political issue. So are you saying, therefore, that that all the advertising in the buses, you or someone or the city or what have you, has satisfied itself, has investigated the company, the enterprise, the what have you, that placed the ad and you have verified that there is no improper, controversial material in this enterprise, in this company, that United Way, there's nothing you could find in United Way that would offend anybody? Your Honor, our policy... Or this Davis Disability Unit or whatever it is, which according to Mr. Theriot, advertises its Christian character. You've investigated that and you found there's nothing controversial about mentioning its Christian character. The Women's Health Link ad wasn't rejected because it was from a religious organization. It was rejected because the ad, as well as when you look at the website that it... Yes, but see, looking at the website means conducting an investigation behind the advertisement. Now your regulation only talks about the advertisement. The advertisement contains material. The advertisement contains profane language. It doesn't say anything about the enterprise that has placed the advertisement, the advertiser, as opposed to the advertisement. The CityLink policy also has a provision that when the identity of the advertiser is unclear, that the CityLink may look to the website that's referenced... Now what do you mean by identity unclear? There's nothing unclear about Health Links, that is the advertiser. When you look at it in the context of how this ad was initially placed, it is unclear. Does the city investigate every advertiser? When the identity of the advertiser is unclear, it has the right to investigate. What do you mean identity of the advertiser? Health Links, there's nothing unclear about its identity. Yes, there is. When the ad was initially submitted, it was submitted by Becky Rognes, who's the communications manager at Allen County Right to Life, and the email that included that advertisement included the Allen County Right to Life email address, their website, their phone number, and their address. Look, what you have done for Health Links, but as far as we know, for nothing else, you have gone behind the ad to the enterprise to see whether there's anything offensive in it. But your regulation, your policy, just talks about the advertisements. It doesn't talk about the advertiser. Well, in addition to our policy that allows us to investigate the website when the identity of the advertiser is unclear, we look for case law from this circuit as to whether or not it is permissible to go beyond... There's nothing unclear about the advertiser, Health Links. It gives you a website and a phone number. You know what it is. There's no un-clarity there. When it was submitted the second time, it was submitted by Julie Perkins with Women's Health Link, but it used the same address and phone number as Allen County Right to Life. This is all an admission to a fairly obvious case of viewpoint discrimination. You're rejecting the ad, which has nothing to do with abortion, on the basis of the viewpoint of the speaker. Absolutely not. ...obvious case of viewpoint discrimination. Absolutely not, Your Honor. You are. You've admitted that. You said you're disallowing access to this advertising forum because this is a pro-life group. We don't allow ads on abortion one way or the other. Right. It's not an ad on abortion. When you look at the website... No, but look, you do not routinely study the advertiser, and your policy says nothing about the advertiser, just about what is contained in the advertisement, and this advertisement for Health Link is completely innocuous. Well, Your Honor, we... No one looking at it would dream that it had anything to do with abortion. Judge, we look for cases on whether or not it's permissible, from this circuit, whether or not it's permissible to look beyond... Why don't you change your policy to say that you investigate not on the advertisement, you investigate the advertiser, to see if the advertiser is engaged in controversial activities? The policy says that we have a right to look at the website when the identity of the advertiser is unclear, but... We're getting the policies. There's no uncertainty about the identity of the advertiser. It's called Health Links. It was unclear to us because... How can it be unclear to you that that's the advertiser? It says on the advertisement, Health Links. Because it was submitted to us by Allen County, right? Well, actually, it's going to be submitted by somebody, by a person. What difference does that make? Well, Your Honor, we cited the Sixth Circuit Court of Appeals case... Forget the Sixth Circuit. Pardon? Your policy says advertisement. It does not say advertiser. As I restated, our policy says when the identity of the advertiser is unclear... There's no ambiguity. The advertiser is Health Links. Are you going to say the person who calls up from Health Links, that is the advertisement? That is the advertiser? Some clerk who calls up and says, I'd like to place an ad? Then you investigate that person? The identity of the advertiser was unclear to Betsy Kushmar. Health Links. That's what the advertiser is. Well, regardless of that, the Sixth Circuit in the American Freedom... I don't consider that something to be disregarded. If you look at all your other ads in the bus, they don't ever identify some individual who called up and said, we want an ad. The advertiser is the entity, the Healthy Indiana Plan, or Goshen Saves Lives Organization, or Consumer Credit Counseling Service. They don't give the name of an individual in the company. Judge, the Sixth Circuit has addressed this issue in a public transit advertising case. And in American Freedom Defense Initiative versus Suburban Mobility Authority for Regulation Transportation, I quote the Sixth Circuit saying, to substantiate our understanding of the apparent message of the advertisement, we may look beyond the four corners to websites that the advertisement incorporates by reference. Well, so what were they talking about? What was the entity? The entity in that particular... These bus ads? These were bus ads. And it was unclear the identity, or to substantiate fully the apparent message. You're not going anywhere with the clarity of the... We know who the advertiser is. So this was an advertiser of what in the Sixth Circuit case? It was an advertisement that was determined after looking at the website to be political in nature. Do you recall specifically? It basically... It was a FATWA advertisement in the buses. It was a what? FATWA, F-A-T-W-A, which is an organization that is involved in Middle East conflicts. And they looked at the website to determine whether or not this was in fact a political... So what was the town or the city or... It was the Suburban Mobility Authority. It was in the Detroit region. Let me see if I can tell you exactly which. It is a state-run transit authority throughout Michigan's four southeastern-most counties. And did they have a... And did this county or whatever it was, did this have a rule similar, a policy similar to yours? The advertisement contains material... I don't know what FATWA means, but I'm not sure what FATWA means, but I'm not sure what FATWA means. But from what you say, it looks as if they looked behind. They looked into the... At the website that was included in the... Okay, but what was their policy? They could have a policy of looking behind the advertisement to the advertiser. You... I don't believe their... The 4th Plain doesn't have that. I don't believe that... Do they have that? I don't believe there was a specific policy that allowed them to go beyond the four corners of the advertisement itself, but the Sixth Circuit said, to fully understand the purpose of the ad, we may look beyond the four corners of the ad to the website that's incorporated in that advertisement. What do you mean? They understood the purpose of the ad from just looking at the ad? To substantiate our understanding of the apparent message of the ad. Okay, but there's no apparent message in HealthLink's ad that has anything to do with abortion. It just says women's health care. Let's use an analogy. Let's suppose that someone wanted to post an ad that said, defend our children, and there's a website underneath it. You go to the website and it's an organization that's opposed to transgender bathrooms. Can you say that that is not an ad dealing with a political issue, because it doesn't use that term in the ad? Of course not. I'm just talking about what your own policy says, which is about the advertisement contains material. If you start looking to the product or activity advertised in every one of your bus advertisements, you'll be extremely busy, and you will discover that there are a great many controversial companies that have perfectly innocuous ads. Suppose they have an ad for Exxon or for Mobil, you know? There are a lot of people who don't like oil companies. They think they destroy the environment, right? But the advertisement itself doesn't say we destroy the environment, right? It's perfectly innocuous. Right. There's nothing in your policy which suggests that you go behind the ad to the advertiser to find out if there's anything controversial about the advertiser. For example, one of your bus advertisements is for a law firm. You investigate to see, is this a reputable firm? Are the clients satisfied with it? Do you do that? No. No. Why not? Well, because it's not violating a provision in our policy, simply because it's a commercial advertisement. But you don't know because you haven't looked. Maybe this law firm, you know, is highly controversial. Maybe it's constantly being disciplined, right? But you don't look. You just picked on the one that you knew was involved with abortion or opposition to abortion. If this had been an ad by Planned Parenthood that was advocating a position on pro-choice, we would have excluded the ad for the same reason. Of course, because everyone knows what Planned Parenthood stands for. You see that in the ad. The ad contains material, namely Planned Parenthood, that is controversial. But the term health link is not controversial. But when you look at the website that clearly says... I know, but you don't look at the website of all your ads. You don't investigate all the ads in the buses to make sure that the advertiser, as distinct from the advertisement, is as innocuous as the advertisement. In this situation, we did investigate because the ad was initially submitted by Allen County Right to Life. The identity of the advertiser was unclear to us. I know you disagree with that, but that's why we looked at the website, because it wasn't clear who the identity of the advertiser was. We don't investigate every ad. You're right, but in this particular case... Why don't you investigate every one? Aren't you worried that many of these facially innocuous advertisers, in fact, are engaged in all sorts of nefarious activities? Well, you have some, I think, private universities, private colleges advertising the bus. There's one of those, but... Private college? Yes. Well, do you investigate? You know, private colleges, for-profit colleges, very, very controversial and considered a racket by many. So did you investigate to see whether this college was one of those? Well, it was obvious that the ad was not advocating a position on a religious... Of course the ad... And this ad does not, for health links, the ad does not advocate anything. You have to go behind the ad. Yes. Now, given the bad reputation of for-profit colleges, you'd think when you see an ad for a for-profit college, you'd say, we have to investigate to see whether it's a reputable college. But you don't do that. It's not in our policy to determine whether... Nothing is in your policy about the advertisement. It's all about the contents of the advertisement. The website, you know, the URL and the phone number on the health link ad, these are not part of the ad. There's something you go to to find out about the company. Just as with a private, with a for-profit college, there'll be a phone number in the ad so you can find out more about it. We don't investigate and say, well, maybe this one is a racket. You know, we have an obligation to strictly enforce our policy. What if we allowed this ad? But your policy... I don't understand. You can read, can't you? Your policy says the advertisement contains material, not the advertiser, you know, is doing something... If we allowed this ad to run, then the next advertisement might be one that shows a pregnant woman, and the next one after that might show... But that's ridiculous, because if it shows a pregnant woman, then the advertisement itself contains controversial material. But where do you draw the line? That's the problem. We don't want to be charged with unbridled discretion. Where you draw the line is you look and see whether the advertisement itself is offensive. Not whether the company or whatever enterprise has sponsored the advertisement, does things that some of the bus riders, the riders on the bus will be disturbed by. This ad was not rejected because it was offensive. It was rejected because it was advocating a position on abortion. No, the advertisement does not advocate anything. When you look beyond the four corners to the website... Yes, but you don't look beyond the ad with any of your other bus ads. If the identity of the speaker was unclear, we would. There's nothing... There's no clarity about the identity of the... It's health links. I see my time is up. I'm happy to answer any more questions. I guess not. Okay. Thank you very much, Mr. Beverstead. Mr. Theriot? I'd just like to speak quickly to the Sixth Circuit case that my colleague was referencing. I think the difference is on the face of that ad, it was clearly violative of the policy prohibiting political speech. As a matter of fact, the name of the organization was refugefromislam.com and it said Fatwa... Was refuge... Refugefromislam.com. There were messages on the ad itself that indicated, hey, we ought to look into this a little bit further. Fatwa is a religious term. Sure, it is. It's a religious term. You know, the face of the ad was arguably anti-religious. That's the reason why... Oh, Fatwa was in the ad? Yes. What was the name of the organization? The name of the organization was refugefromislam.com. So both of those were in there. And so that justified going to look at the website. However, as Your Honor... What is a Fatwa? Is it like a death sentence or something? I think it's a proclamation from Islamic clergy regarding a certain issue. And a Fatwa can be issued against a certain individual, for instance, somebody who's anti-Islam. So I think there is certainly some religious overtones there. And I think Your Honor pointed to the real issue is the policy doesn't allow it to go beyond the ad unless there is some uncertainty. And they have to have guidelines to make sure that their discretion isn't unbridled and they can just investigate people they don't like. And that's what's at bottom here is they didn't like Women's Health Link and what it stands for. And so they disallowed the ad. And unless the court has any further questions, I would... Thank you, Mr. Thurman. Thank you. Thank you to both counsel. Move on to our next case.